IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GRACE ABRANTES,** | : | **Civil No. 1:23-CV-01324** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COLLEEN SMITH,** | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA DHS REGION** | : | |
| **PROGRAM REPRESENTATIVE, et** | : | |
| **al.,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court are two motions to dismiss the amended complaint for failure

to state a claim filed by defendants (1) York County, through its subunit Office of

Children, Youth, and Families ("CYF"), CYF Administrator Tanya Stauffer, CYS

Caseworker Carolyn Whitehurst, and CYF Caseworker Supervisor Melissa Messick

in their individual and official capacities (collectively, the "County Defendants")

and (2) Colleen Smith in her individual capacity as the Commonwealth of

Pennsylvania's Department of Human Services ("DHS") Regional Program

Representative. (Docs. 17, 19.) Plaintiff Grace Abrantes ("Plaintiff") alleges, among

other things, that her First and Fourteenth Amendment rights to familial association,

due process, and equal protection were violated when her adopted children were

temporarily removed from her home during an investigation into alleged, but

1

ultimately unfounded, child abuse. For the reasons set forth below, the motion will be granted in part and denied in part.

## I.  **BACKGROUND**

Plaintiff is an African American Latina with experience working in youth facilities in York, Pennsylvania. (Doc. 15 ¶¶ 5, 29-30.) By February 2021, she had worked full time at a youth residential facility for seven years and part time at another youth facility for around one year. (*Id.* ¶¶ 29-30.) Around the same time, Plaintiff had also received clearances to open her own youth facility, with an expected opening time of April 2021 after she submitted a proposed budget and passed inspection. (*Id.* ¶¶ 32-33.)

Plaintiff had two adopted children, ages three and five, to whom she had provided care for three years and the adoption of whom was finalized in December 2020. (*Id.* ¶ 18.) Around February 16, 2020, a teacher found a mark on the younger child's arm and contacted CYF. (*Id.* ¶ 20.) The same day, Whitehurst and Messick,[1] with the assistance of a police officer and the apparent approval of Stauffer, removed the children from Plaintiff's home pending an investigation. (*Id.* ¶ 21.)

According to Plaintiff, she was not provided with notice of the accusations against her and was not provided with an opportunity to be heard prior to the removal

---

[1] Many of Plaintiff's averments also include that Whitehurst and Messick may have been acting with another unidentified, and unnamed (even as a John Doe), CYS employee.

of her children, or after the removal of her children, and there was no substantial evidence of child abuse or neglect. (*Id.* ¶¶ 22, 24, 36.) Beginning on the day her children were taken and continuing through October 2022, and despite the lack of evidence, the County Defendants and Smith communicated to Plaintiff's employers and the agency that would license her prospective youth facility that she was being investigated for child abuse. (*Id.* ¶¶ 22, 25.) As a result of this communication, Plaintiff was placed on leave from her two jobs at the youth facilities and was unable to open her own facility in April 2021 as planned. (*Id.* ¶¶ 31-34.)

CYF informed Plaintiff that it had ninety days to investigate the alleged child abuse. (*Id.* ¶ 35.) In April 2021, however, the County Defendants returned the children to Plaintiff's care on the condition that Plaintiff submit to their terms, which included completing "Love and Logic" parenting classes and using Pressley Ridge in-home services. (*Id.* ¶¶ 36-37.) These conditions were apparently met around October 2021. (*Id.* ¶ 37.) Plaintiff never received a hearing prior to the removal of her children, and she was never informed by CYF that she could have refused its conditions, had the right to request a hearing and present a defense, and had the right to be represented by an attorney at such a hearing. (*Id.* ¶¶ 38, 41.) Further, the County Defendants did not inform Plaintiff that, unless the children were in imminent danger of abuse, Pennsylvania law requires a court order prior to removing children, that a state trooper must remove them, and that a hearing must be held within seventy-two

hours of removal. (*Id.* ¶¶ 42-43.) Plaintiff further alleges that the investigation by the County Defendants was biased and motivated by discrimination based on her race. (*Id.* ¶¶ 27, 72.)

On August 9, 2021, Plaintiff received a notice from Smith that her name was listed on the statewide database (the "ChildLine Registry") of persons "indicated" in child abuse. (*Id.* ¶ 48.) Included in this notice was a June 9, 2021, letter from Smith to a nonparty CYF employee notifying CYF that Plaintiff was indicated for child abuse. (*Id.* ¶ 49.) The notice also informed Plaintiff of her right to appeal her inclusion in the ChildLine Registry. (*Id.* ¶ 50.) Plaintiff exercised this appeal right on August 15, 2021. (*Id.* ¶ 56.) On August 17, 2021, DHS scheduled a hearing for March 8, 2022, before the Bureau of Hearings and Appeals. (*Id.* ¶ 57.) Around October 2022, Plaintiff received a favorable decision from the Bureau, and the indicated finding of child abuse was reversed and her name removed from the ChildLine Registry. (*Id.* ¶ 58.)

Plaintiff alleges that she lost income due to being placed on leave from her jobs, suffered a loss of around $15,000 for furniture she purchased for her youth facility, $1,440 for storage expenses, and around $8,000 in legal expenses for her appeal.

Plaintiff then initiated this suit by the filing of a complaint, and thereafter filed an amended complaint. (Docs. 1, 15.) In the amended complaint, Plaintiff alleges

the County Defendants and Smith (1) violated her procedural due process rights under the Fourteenth Amendment and the Pennsylvania Constitution (Count I); (2) violated her substantive due process and equal protection rights under the Fourteen Amendment and the Pennsylvania Constitution (Count II); violated her First Amendment right to familial association; and (4) maliciously abused process. Both the County Defendants and the Commonwealth Defendants have filed a motion to dismiss the amended complaint. (Docs. 17, 19.) The motions have been fully briefed and are ripe for review.

## I.   __STANDARD OF REVIEW__

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw

unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.   **DISCUSSION**

For clarity's sake, the court will summarize the different aspects of Plaintiff's multifaceted and somewhat overlapping claims. Plaintiff alleges that her procedural due process rights were violated when (1) her children were taken; (2) her employers and the youth licensing agency were contacted; (3) her children were returned to her under coercive circumstances; and (4) her name placed on the ChildLine Registry as an indicated child abuser, all without notice or a hearing prior to each alleged deprivation. (Doc. 15 ¶¶ 73-79.) She alleges these same actions violated her substantive due process rights and constituted a malicious abuse of process (*Id.* ¶¶

80-84.) Plaintiff further alleges that her equal protection rights were violated because the actions or inactions by Defendants were motivated by discrimination. (*Id.* ¶ 72.) Finally, she alleges that her First Amendment right to familial association was violated when (1) she was indicated for child abuse; (2) her employers were contacted; and (3) she was placed on the ChildLine Registry because the alleged policies adopted, implemented, and enforced by the Defendants were not narrowly tailored to protect children. (*Id.* ¶¶ 85-86, 87-93.)

The County Defendants move to dismiss Plaintiff's amended complaint in its entirety on the grounds that Plaintiff (1) insufficiently alleges personal involvement by the individual defendants; (2) fails to state claims under the First and Fourteenth Amendments; (3) cannot obtain monetary relief under the Pennsylvania Constitution; (4) fails to state a claim for malicious abuse of process; and (5) seeks relief against the individual defendants who are entitled to qualified immunity. [2] Similarly, Smith moves to dismiss the amended complaints on the grounds that Plaintiff (1) does not sufficiently allege her personal involvement; (2) fails to state due process violation; and (3) seeks damages against her where she is entitled to qualified immunity. The court will address each in turn.

---

[2] The County Defendants additionally move to dismiss CYF as a party, arguing that as a subdivision of a larger government entity, it is not separately subject to suit from York County. (Doc. 20 p. 3-4.) The court finds this unnecessary, as the amended complaint appropriately states that "Defendant is the County of York . . ." and only one York County entity is listed as a defendant on the docket.

### A. Personal Involvement

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under of state law." *Rehburg v. Paulk*, 566 U.S. 356, 361 (2012). A defendant in a Section 1983 claim "must have personal involvement in the alleged wrongs to be liable" and "cannot be held responsible for a constitutional violation which he or she neither participated or approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Personal involvement may further be demonstrated by "personal direction" or "actual knowledge and acquiescence." *Rode v. Dellarciprate*, 845 F.2d 1195, 1208 (3d Cir. 1988). In both cases, the allegations must be stated with particularity. *Id.* In the case of a supervisor, such as Stauffer, a supervisor's "participation in after-the-fact review of alleged wrongdoing, or failure to take action to prevent repetition of misconduct, is insufficient to establish personal involvement." *Odi v. Alexander* 378 F. Supp. 3d 365, 379 (E.D. Pa. 2019).

Here, and without regard to the merits of her claims, Plaintiff has sufficiently alleged personal involvement of the Defendants. She alleges that Whitehurst and Messick removed her children from her home under the direction of Stauffer and that the County Defendants failed to provide her notice of the accusations against her (Doc. 15 ¶¶ 21-22); that the County Defendants and Smith informed her current

and prospective employers that she was accused of child abuse without any evidence supporting that accusation (*id.* ¶ 23); that she could no longer work at her current employers because of the false accusations by the County Defendants; that she was misled into accepting an agreement without being informed of her rights (*id.* ¶¶ 31, 36-39); and that Smith sent her a letter informing her that she was listed on Pennsylvania's ChildLine Registry as a perpetrator in an "indicated report of child abuse" prior to having an opportunity to contest her inclusion in it (*id.* ¶¶ 49-51). For each allegation, Plaintiff provides specific or generalized dates of the violation where appropriate. (*Id.* ¶¶ 23-24, 36-37, 48-50, 56-58.)

In the case of Stauffer, a supervisor, Plaintiff does not appear to allege an "after-the-fact" review of alleged wrongdoing, but rather that Stauffer actively participated in the alleged violations through personal direction. With respect to Smith, Plaintiff does not argue that Smith was acting as a supervisor, and thus her citation to *Odi* does not support her defense that she was not personally involved. Further, while Smith argues that she "[a]t most she signed a letter to Plaintiff and CYF noting that following the CYF investigation the child abuse report against plaintiff would be listed in the statewide databases as an indicated report" and that she cannot be held personally liable for performing her statutorily described ministerial duties (Doc. 18 p. 11), she does not provide any citation supporting her contention that a state actor performing a ministerial action is exempt from liability

and, indeed, Plaintiff appears to suggest that Pennsylvania's Child Protective Services Law, which Smith was purportedly following, itself violates due process. The court is thus satisfied that Plaintiff has sufficiently alleged Defendants' personal involvement as she has plead the necessary "who, what, when, where" to put the Defendants on notice of the allegations against them.

### B. Pennsylvania Constitutional Claims

Next, the County Defendants and Smith each move to dismiss Plaintiff's claims brought pursuant to the Pennsylvania Constitution on the basis that it does not provide a cause of action for money damages. This is correct. The Pennsylvania Supreme Court has held that Pennsylvania has no state law analog to Section 1983, and absent such an analog, money damages are unavailable for state constitutional violations. *See Mount Airy #1, LLC v. Pa. Dep't of Revenue*, 154 A.3d 268, 280 n. 11 (Pa. 2016). Thus, these claims must be dismissed.

### C. Due Process Claims

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law . . . ." *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (citing U.S. Const. amend. XIV). The Due Process Clause contains both a procedural and a substantive component. *Id.* (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). The court will address each in turn.

### 1. Procedural Due Process

To maintain a Section 1983 claim for a violation of procedural due process claim, Plaintiff must show that (1) she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures Defendants made available to her did not provide her with due process of law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). "[T]he focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty of property interest." *Giuliani v. Springfield Township*, 726 Fed. App'x. 118, 122 (3d Cir. 2018) (citing *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 397-98 (E.D. Pa. 2012)). Thus, "when a state affords a full judicial mechanism with which to challenge the administrative decision in question, [it] provides adequate procedural due process, whether or not the plaintiff avails him or herself to the provided appeal mechanism." *Id.* (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995) (internal quotations omitted)). The liberty rights protected by procedural due process "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" or they "may arise from an expectation or interest created by state laws or policies." *Steele*, 855 F.3d at 507 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

In the context of child abuse investigations, the Third Circuit has recognized a "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Miller v. City of Philadelphia*, 174 F.3d 368, 373 (3d Cir. 1999). This liberty interest, however, "is limited by the compelling government interest in the protection of children." *Croft v. Westmoreland County Child and Youth Services*, 103 F.3d 1123, 1125 (3d Cir. 1997). The Third Circuit in *Croft* observed that separating a parent and child "during the pendency of child abuse investigations absent any procedural safeguards raises a procedural due process issue." *Croft*, 103 F.3d at 1125 n.3. However, it also explained that a caseworker could immediately remove a child if there is "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id.* at 1126. Having found a liberty interest in the care, custody, and management of Plaintiff's children, the next step is to determine what process is due.

The Supreme Court has held that "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances," but rather "is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (internal quotations and citations omitted). The court thus looks to the adequacy of

the procedures provided by Pennsylvania law given the particular situation as Plaintiff alleges.

Pennsylvania's Child Protective Services Law ("CPSL") provides a comprehensive scheme for reporting and investigating allegations of child abuse within the Commonwealth. 23 Pa. C.S. § 6301, *et seq.* The CPSL provides that a child may be taken into protective custody under six different circumstances. *Id.* § 6315(a)(1)-(6). Section 6315(a)(1) refers to another statute for taking children into custody, that states in relevant part, "[a] child may be taken into custody: . . . (3) By a law enforcement officer or duly authorized officer of the court if there are reasonable grounds to believe that the child is suffering from illness or injury or is in imminent danger from his surroundings, and that his removal is necessary." 42 Pa. C.S. § 6324. Thus, it is plain under the statute and case law that Plaintiff cannot maintain a procedural due process claim for the physical act of the County Defendants taking her children without notice and opportunity to be heard, as it was done pursuant to this provision and no pre-deprivation hearing is required.

However, the CPSL further provides:

(b) Duration of Custody. — No child may be held in protective custody for more than 24 hours unless the appropriate county agency is immediately notified that the child has been taken into custody and the county agency obtains an order from a court of competent jurisdiction permitting the child to be held in custody for a longer period. . . .
(c) Notice of Custody. (1) Except as provided in paragraph (2), an individual taking a child into protective custody under this chapter shall immediately, and within 24 hours in writing, notify the parent, guardian

or other custodian of the child of the whereabouts of the child, unless prohibited by court order, and the reasons for the need to take the child into protective custody and shall immediately notify the appropriate county agency . . .

(d) Informal Hearing. — In no case shall protective custody under this chapter be maintained longer than 72 hours without an informal hearing under 42 Pa.C.S. § 6332 (relating to informal hearing). If, at the hearing, it is determined that protective custody shall be continued and the child is alleged to be without proper parental care or control or is alleged to be a dependent child under 42 Pa.C.S. § 6302 (relating to definitions), the county agency shall within 48 hours file a petition with the court under 42 Pa.C.S. Ch. 63 alleging that the child is a dependent child.

23 Pa. C.S. § 6315(b), (c), (d)

Considering Plaintiff's allegations that she was not ever given a hearing, apprised of her rights to an attorney, or notice of her rights generally prior to entering into an agreement with the County Defendants for the return of her children, this court has found that, under certain circumstances, the entry of a voluntary safety plan may deprive a parent of their right to familial association. *Isbell v. Bellino*, 983 F. Supp. 2d 492, 501 (M.D. Pa. 2012). Further, the Third Circuit recently held that a Delaware children and youth services caseworker was entitled to qualified immunity for coercing a parent into signing a child safety agreement, framing the right as "a parent presented with a child safety agreement has the right to consider the agreement without being told that she faces the possibility that the state will petition a court for an order to place the child in foster care unless she signs the agreement." *Spahr v. Collins*, 2024 U.S. App. LEXIS 20171 *6 (3d Cir. Aug. 9,

2024). The Court reasoned that informing a parent of the options, either a voluntary agreement to place a child with another family member, or foster care, "and the legal consequences thereof, is no more legally coercive than informing a criminal defendant offered a plea agreement of the maximum penalty he faces for his crimes absent the agreement." *Id.* *7 (citing *United States v. Green*, 388 F.3d 918, 923 106 F. App'x. 358 (6th Cir. 2004). Here, however, the situation is different as Plaintiff alleges that she was not presented with the alternative options prior to entering into the agreement for the return of her children. The court sees this as a violation that is "so obvious," given the CPSL's statutory scheme, as to make qualified immunity unavailable for the County Defendants. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Regarding her inclusion in the ChildLine Registry, however, Plaintiff fails to state a claim because the CPSL provides an appeal process, of which Plaintiff successfully took advantage. Thus, the process worked precisely as intended, and this aspect of Plaintiff's procedural due process claim will be dismissed as to both the County Defendants and Smith.

Related to her inclusion in the ChildLine Registry, Plaintiff alleges that her reputation was damaged because Defendants informed her employers of her status and because her residential youth facility license was denied. It is well-established, however, that "reputation alone is not an interest protected by the Due Process Clause." *Clark v. Twp. Of Falls*, 890 F.2d 611, 619 (3d Cir. 1993) (citing *Paul v.*

15

*Davis*, 454 U.S. 693, 701-02 (1976)). Rather, a procedural due process claim for a deprivation of a liberty interest grounded in someone's reputation must show "a stigma to his reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (citing *Paul*, 454 U.S. at 701)). Regarding her employment with the youth facilities, Plaintiff does not have a recognized liberty interest under the Fourteenth Amendment in continued employment with private employers, unless "[w]here the independent source of a property interest is a private contract, the state cannot transgress on the claim of entitlement to continued employment without due process of law." *Wilson v. MVM, Inc.*, 475 F.3d 166, 177 (3d Cir. 2007). However, nothing in the amended complaint suggests that Plaintiff was anything but an at-will employee with a private employer, and thus, this aspect of her procedural due process claim will be dismissed against all Defendants. Regarding the denial of Plaintiff's expectation that she would receive a license to open her own youth residential facility, the Supreme Court has held "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The property interests are not created by the Constitution but are created from state law or statute. *Id.* As Plaintiff's allegations are unclear as to whether she had a legitimate claim to entitlement to the license, rather than merely

a desire, she has not plausibly stated a procedural due process claim against Defendants.

## 2. Substantive Due Process

"The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs, *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000), to "guarantee protect[ion] against government power arbitrarily and oppressively exercised," *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986). To maintain a Section 1983 claim for a violation of substantive due process rights, Plaintiff must allege she was "deprived of a particular interest that 'is protected by the substantive due process clause.'" *Steele*, 855 F.3d at 500. Unlike procedural due process, however, "[s]ubstantive due process rights are founded not upon state law but upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Nunez v. Pachman*, 578 F.3d 228, 233 (3d Cir. 2009).

The Supreme Court has further stated that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). This right is not absolute. *Croft*, 103 F.3d at 1125. The liberty interest in familial integrity is limited by the government's compelling interest in

protecting children, and the "right to familial integrity . . . does not include a right to remain free from child abuse investigations." *Id.* As such, to prevail on her substantive due process claim, Plaintiff must demonstrate that the government action was so egregious or ill-conceived as to "shock the conscience." *Miller*, 174 F.3d at 375. The government's action cannot merely be negligent, but must "exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that it indeed 'shocks the conscience.'" *Id.* at 375-75. Further, where the government possesses evidence giving rise to a reasonable suspicion of child abuse or where a child is in imminent danger of abuse, removal of the child from the parent's custody does not infringe on parental rights, "even if evidence produced during the course of an investigation demonstrates that no abuse occurred." *Croft*, 103 F.3d at 1126.

Here, Plaintiff's amended complaint states that the children were removed after a teacher reported that her younger child had a bruise on her arm. While the allegation of child abuse was eventually determined to be unfounded, the case law supports that Plaintiff has failed to state a claim with respect to the removal of her children under the substantive due process clause. Regarding Plaintiff's inclusion in the ChildLine Registry and the denial of the youth residential facility license, the court has already stated that the Due Process Clause does not protect reputation alone, instead requiring a "stigma plus" deprivation of another interest or right.

While the Third Circuit has not yet ruled on this issue, other courts have found that "stigma plus" claims, like the one Plaintiff appears to allege, lie only as procedural due process claims. The court will follow this lead.[3] Thus, this portion of Plaintiff's substantive due process claim will be dismissed. Lastly, regarding Plaintiff's allegations that she was not provided any hearing despite a requirement that she have an informal hearing within 72 hours of the removal of her children and that she was not apprised of her right to counsel or her other rights, the court finds that Plaintiff has sufficiently plead a substantive due process claim against the County Defendants. However, the claim will be dismissed against Smith as there are no allegations that she was personally involved in this respect.

### D. **Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The clause requires equal treatment of

---

[3] *Hogan v. City of Fort Walton Beach*, No. 3:18-CV-1332-MCR-HTC, 2019 U.S. Dist. LEXIS 236293, at *2 (N.D. Fla. June 3, 2019) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302-03 (11th Cir. 2001) (recognizing that the "stigma-plus" test implicates "the procedural protections of the Due Process Clause."); *Cotton v. Jackson,* 216 F.3d 1328, 1330 (11th Cir. 2000) (same); *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) (concluding that the "stigma-plus" test only applies to procedural due process claims); *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006) ("[S]tigma plus is a species within the phylum of procedural due process claims"); *Keller v. City of Tallahassee*, 181 F. Supp. 3d 934, 942-43, 950 n.16 (N.D. Fla. 2015) (determining that the plaintiff's due process claims based on a "stigma-plus" liberty interest were not cognizable as substantive due process claims); *McKinney v. Pate,* 20 F.3d 1550, 1560 (11th Cir. 1994); *Salazar v. City of Albuquerque*, No. CIV 10-0645 JB/ACT, 2014 U.S. Dist. LEXIS 160250, at *22 (D.N.M. Oct. 27, 2014) ("A stigma-plus claim rests on a violation of procedural due process and not of substantive due process.")).

"all persons similarly situated." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106 125 (3d Cir. 2018) (quoting *Shuman ex rel. Shertzer v. Penn manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). At the pleading stage, Plaintiff must make nonconclusory allegations that she and other similarly situated individuals who were allegedly treated differently from her are "alike 'in all relevant respects.'" *Childrens Health Defense, Inc. v. Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 84 (3d Cir. 2024) (quoting *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020)). Classifications affecting either fundamental rights or involving a protected class are subject to heightened scrutiny. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Here, Plaintiff has not alleged that the CPSL classifies her differently than others and has provided nothing but conclusory averments that she was treated differently based on her race. Thus, this claim will be dismissed against the County Defendants and Smith.

**E. First Amendment Right to Familial Association**

The First Amendment protects the right of "intimate association" that "involves an individual's right to enter into and maintain intimate or private relationships free of state intrusion." *Ph Lambda Phi Fraternity, Inc. v. University of Pittsburgh*, 229 F.3d 435, 442 (3d Cir. 2000). To properly aver a violation of this right, Plaintiff must show that the challenged action "directly and substantially interfered with" a protected relationship. *See Lyng v. Int'l Union, et. al.*, 485 U.S.

360, 365 (1988); *Nittoli v. Morris County Bd. of Chosen Freeholders*, 2007 U.S. Dist. LEXIS 37536, *7 (D.N.J. May 22, 2007). A "protected" relationship is "distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id.* (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 620 (1984)). Protected relationships include "those that attend the creation and sustenance of a family-marriage, . . . the raising and education of children, . . . and cohabitation with one's relatives." *Id.*

Plaintiff alleges that her familial association with her children was intruded when the County Defendants and Smith contacted her. However, it appears this communication only affected her relationship with non-family. The court will thus dismiss this aspect of Plaintiff's First Amendment claim.

### F. Malicious Abuse of Process

Under Pennsylvania law, the tort of Malicious Abuse of Process exists "where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989); *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super 1993). With respect to this claim, Plaintiff has not plausibly alleged that any of the actions alleged to be taken by the County Defendants or Smith were used for a purpose other than that

intended by law and has included only threadbare and conclusory assertions supporting this claim. Thus, it will be dismissed.

### III.   <u>**CONCLUSION**</u>

For the reasons set forth above, the motion to dismiss will be granted in part and denied in part. An appropriate order shall follow.

<u>/s/ Sylvia H. Rambo</u>
SYLVIA H. RAMBO
United States District Judge

Dated: August 28, 2024